UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISAQ GAY SANDERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-01892-TWP-DKL ) |
| CAROLYN COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Lisaq Gay Sanders ("Ms. Sanders") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[1] For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I. BACKGROUND

**A. Procedural History**

Ms. Sanders filed an application for DIB on January 6, 2011, alleging a disability onset date of August 19, 2010. The claim was denied initially and upon reconsideration, and she requested a hearing on August 30, 2011. On June 19, 2012, a hearing was held before Administrative Law Judge Roxanne Fuller (the "ALJ"). The ALJ issued a decision on August 29, 2012, finding that Ms. Sanders was not disabled from her alleged onset date through the date of

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

the ALJ's decision. On September 27, 2013, the Appeals Council denied Ms. Sanders's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

**B.     Factual Background**

Ms. Sanders was 49 years old when the ALJ rendered her decision and 46 years old on her alleged disability onset date. She had a tenth-grade education, did not obtain her GED, and had not received any type of vocational training. Prior to her alleged onset date, Ms. Sanders had relevant work history as a warehouse worker. She lives with her husband, her 28-year old son, and 12-year old daughter. Ms. Sanders alleges disability due to obesity, rheumatoid arthritis, chronic obstructive pulmonary disease, sleep apnea, and anxiety.

Ms. Sanders complains of swelling in her legs and feet, difficulty breathing due to arthritis in her lungs, joint pain due to arthritis in her hands and knees, and anxiety attacks and slight depression. Ms. Sanders began treatment with her primary care physician, Dr. Freida Thompson, M.D. ("Dr. Thompson"), in approximately 1990. However, her treatment records only begin in August 2010 when she was seen by Dr. Elizabeth T. Le, M.D. ("Dr. Le") for complaints of joint pain and abnormal blood work. Dr. Le diagnosed Ms. Sanders with rheumatoid arthritis, and found that there was no edema present, she had full strength in both her upper and lower extremities, sensation was intact, and reflexes were within normal limits. Dr. Le also noted that Ms. Sanders's gait was normal and her cervical, thoracic, and lumbar spine were within normal limits.

During the remainder of 2010, Ms. Sanders was seen several times by physician's assistant Joel Westberry, P.A.-C., who, in December 2010, referred her back to Dr. Thompson. Ms. Sanders resumed treatment with Dr. Thompson in January 2011, after having not been seen by Dr. Thompson since February 2009. She was seen by Dr. Thompson approximately six times over the

following three months. Dr. Thompson noted that Ms. Sanders's neurological functioning, gait, and station were normal, and noted that she was well appearing, in no acute distress, and not chronically ill. On two occasions in 2011, Dr. Thompson completed certificates for return to work, indicating on each occasion that Ms. Sanders was unable to work for periods of approximately two months each time, but could return to work at the end of each period.

Ms. Sanders was seen again by Dr. Le on May 3, 2011, complaining of edema in her lower extremities from her ankles to her feet. Dr. Le diagnosed Ms. Sanders with presently asymptomatic rheumatoid arthritis, lower extremity edema, and generalize osteoarthritis of the lumbar spine and both shoulders. Dr. Le examined Ms. Sanders on October 2, 2011, observing that she was morbidly obese but in no apparent distress. Dr. Le's assessment remained the same from her May 2011 examination.

On April 25, 2011, Dr. William Sobat, M.D. performed a consultative physical examination of Ms. Sanders. The examination showed mild weakness in the legs and normal strength in the arms, with some weakness in the grips of both hands. Ms. Sanders had full range of motion in all joints, edema of the lower legs and ankles, and did not require an assistive device for walking. There was some limitation in forward flexion of the lumbar spine, but a straight leg raising test was negative and there was no deformity, swelling, or effusion of any joint.

On May 9, 2011, medical expert Dr. Fernando R. Montoya, M.D. ("Dr. Montoya") reviewed Ms. Sanders's claim file and completed a Physical Residual Functional Capacity Assessment for the state agency. Dr. Montoya indicated that Ms. Sanders had limitations generally consistent with an ability to perform work at the light exertional level. Dr. Montoya's opinion was affirmed by a second medical expert, Dr. M. Brill, M.D., on August 2. 2011.

Dr. Thompson completed a "Residual Functional Capacity Questionnaire" form at the request of Ms. Sanders's attorney on June 6, 2012. The form was completed three months after Dr. Thompson had last examined Ms. Sanders. Dr. Thompson checked boxes or circled numbers on the form indicating that Ms. Sanders could, *inter alia*, sit for a total of no more than one hour during an eight-hour work day and stand/walk for less than one hour during an eight-hour work day. According to Dr. Thompson, due to Ms. Sanders's impairments or treatments, she would likely be absent from work more than four times a month. Dr. Thompson indicated that Ms. Sanders had experienced these limitations since August 2010.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears

4

in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her

5

acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Sanders meets the insured status requirements of the Act through December 31, 2015, for purposes of DIB. At step one, the ALJ found that Ms. Sanders had not engaged in substantial gainful activity since August 19, 2010, her alleged onset date. At step two, the ALJ found that Ms. Sanders had the following severe impairments: rheumatoid arthritis, chronic obstructive pulmonary disease, sleep apnea, obesity and anxiety. At step three, the ALJ found that Ms. Sanders does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Sanders has the residual functional capacity to perform sedentary work with the following restrictions: never climb ladders, ropes or scaffolds; never climb ramps or stairs; never balance; occasionally stoop, crouch, kneel, and crawl; no concentrated exposure to irritants, such a fumes, odors, dust, and gasses; no concentrated exposure to poorly ventilated areas; no use of moving machinery; no exposure to unprotected heights; able to work in a low stress job defined as having only occasional decision making required, only occasional changes in the work setting; only occasional superficial interaction with the public; and only occasional superficial interaction with co-workers. At step four, the ALJ determined that Ms. Sanders is unable to perform any of her past relevant work. At step five, the ALJ found that considering Ms. Sanders's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, concluding that she is not disabled as defined by the Act.

### IV. ANALYSIS

Ms. Sanders raises a single issue in her request for judicial review, she asserts that the ALJ erred by failing to give controlling weight to Dr. Thompson's opinion and failing to properly consider all of the factors required when determining the weight to give the opinion. Specifically, Ms. Sanders argues that the ALJ improperly gave little weight to Dr. Thompson's Residual Functional Capacity assessment of June 6, 2012, which stated that Ms. Sanders would be absent from work due to her impairments for more than four times per month. (Filing No. 14-11, at ECF pp. 4-6.) The Commissioner argues that the ALJ properly rejected this opinion because it related to a finding that was reserved to the Commissioner.

Generally, an ALJ must give the medical opinions of a claimant's treating physician controlling weight. "A treating physician's opinion regarding an applicant's physical restrictions is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). However, a treating physician's opinion is not entitled to any particular weight when it is an administrative opinion reserved to the Commissioner. *Id.*; *see* 20 C.F.R. § 404.1527(d) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."). Opinions regarding whether a claimant's impairments meet or equal a listed impairment, the application of vocational factors, the determination of a claimant's RFC, and a determination of disability are all administrative findings that are dispositive of the case, and are thus reserved to the Commissioner. 20 C.F.R. § 404.1527(d). A physician's opinions regarding these administrative issues are not considered "medical opinions" as defined in 20 C.F.R. § 404.1527(a).

Dr. Thompson's opinion that was given little weight by the ALJ was an opinion regarding Ms. Sanders's RFC, and thus was not entitled to weight as a "medical opinion." The finding that Ms. Sanders would be absent four times per month is not a physical limitation, but rather a vocational limitation because it addresses Ms. Sanders's ability to work. The ALJ correctly stated that she was precluded from assigning this opinion controlling weight as a matter of law. ([Filing No. 14-2, at ECF p. 29](#)); *see Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("[T]he ALJ need not defer to a doctor's opinion about a claimant's ability to work.").

Ms. Sanders argues that Dr. Thompson's opinion was provided eight months after she stated Ms. Sanders could return to work and there is "no reason to believe that Dr. Thompson's opinion did not reflect a worsening of Ms. Sanders's condition." ([Filing No. 16, at ECF p. 14](#).) However, Ms. Sanders cites to no evidence to support the conclusion that her condition did actually worsen and/or that this was the basis for Dr. Thompson's June 2012 opinion. This argument also ignores the fact that Dr. Thompson indicated that the limitations set forth in the Residual Functional Capacity Questionnaire existed since August 2010, which is contradicted by Dr. Thompson's treatment notes stating that she could return to work in May and August 2011. ([Filing No. 14-11, at ECF p. 6](#).) Therefore, the Court finds that it was not error for the ALJ to give Dr. Thompson's Residual Functional Capacity Questionnaire assessment little weight.

Ms. Sanders also argues that the ALJ erred in her opinion because she did not evaluate all of the factors in 20 C.F.R. § 404.1527(c) in determining the weight to give to Dr. Thompson's opinion. When an ALJ does not give a treating source's opinion controlling weight, she must consider the following factors: (1) the examining relationship; (2) the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) other factors which tend to

support or contradict the opinion. 20 C.F.R. § 404.1527(c); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Because the opinion given little weight by the ALJ was not a "medical opinion," as discussed above, there was no need for the ALJ to address all of these factors with respect to Dr. Thompson's RFC opinion. However, to the extent Ms. Sanders alleges that the ALJ gave Dr. Thompson's opinions as a whole little weight, the Court finds that the ALJ did consider the factors set forth in 20 C.F.R. 404.1527(c). The ALJ noted that Dr. Thompson was Ms. Sanders's primary care physician and has been treating her since 1990, which addresses factors one, two, and five. (Filing No. 14-2, at ECF pp. 25, 29). The ALJ also addressed the fact that Dr. Thompson's opinion was inconsistent within itself, stating that Ms. Sanders's prognosis was "good." (Filing No. 14-2, at ECF p. 29; Filing No. 14-11, at ECF p. 4.) The ALJ also stated that this opinion was inconsistent with Dr. Thompson's progress notes and conservative treatment, and also inconsistent with Dr. Thompson's notes indicating that Ms. Sanders was able to return to work in May 2011 and August 2011, which addresses factors three and four. (Filing No. 14-2, at ECF p. 29.)

Therefore, the Court finds that the ALJ properly considered the factors of 20 C.F.R. § 404.1527 in determining the proper weight to give Dr. Thompson's opinion evidence as a whole, and specifically was not required to give controlling weight to Dr. Thompson's opinion regarding Ms. Sanders's RFC because it was not a "medical opinion." Thus, the ALJ did not commit reversible error.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ adequately supported her conclusions with substantial evidence and did not commit reversible error. Therefore, the decision of the Commissioner is **AFFIRMED**, and Ms. Sanders's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/27/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov